(Decided February 28, 1866.)

---

PATRICK BANNON, BY HIS NEXT FRIEND JAMES COUGHLAN, *vs.* THE BALTIMORE AND OHIO RAIL ROAD COMPANY ; AND THE BALTIMORE AND OHIO RAIL ROAD COMPANY *vs.* PATRICK BANNON, BY HIS NEXT FRIEND JAMES COUGHLAN.

RAIL ROAD COMPANIES, LIABILITIES OF : EVIDENCE, ADMISSIBILITY OF.—In an action against the Baltimore and Ohio Rail Road Company by the *prohein ami* of a child, run over and badly injured by the cars of the company, after evidence of the injury, and for the purpose of showing negligence on the part of the company, the plaintiff proposed to prove that it was the daily practice of the defendants to move their cars without a guard at the rear of the train over the "Y," which was so situated that the engineer at the engine could not see the rear; which evidence the Court below rejected. On appeal, HELD :

That the evidence was collateral and incapable of affording any reasonable presumption or influence as to the matters in issue, and was properly excluded.

GROSS NEGLIGENCE : PRAYERS AND INSTRUCTIONS TO THE JURY : DAMAGES, PUNITIVE AND EXEMPLARY.—The facts enumerated on p. 84, (being substantially the same proved in this case,) are not evidence of *gross negligence*, such as would warrant an instruction to the jury; that if they should find

Bannon *vs.* Baltimore & Ohio R. R. Co.

such negligence on the part of the agents of the Rail Road Company, they might allow punitive or exemplary damages.

MEASURE OF DAMAGES, ELEMENTS OF.—In estimating damages under the evidence referred to, the jury should consider the health and condition of the plaintiff before the injury complained of, as compared with his present condition in consequence of the said injury, and whether the said injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those mechanical employments and pursuits for which, in the absence of the said injury, he would have been qualified ; and also the physical and mental suffering to which he was subjected by reason of said injury ; and such damages should be allowed as in the opinion of the jury would be a fair and just compensation for such injury and suffering.

RAILROAD COMPANIES, LIABILITIES OF : DEGREE OF DILIGENCE ON PART OF DEFENDANT : NEGLIGENCE OF PLAINTIFF.—Rail Road Companies are bound in the management of their engines and trains to use such diligence and care as prudent and discreet persons would use and exercise on such occasions, with such motive power and trains, having due regard to the safety of property and persons ; and if owing to the absence of such diligence and care a party is injured, he is entitled to recover for the injury, unless from his own negligence or want of reasonable care he has brought the same upon himself.

——: ——: ——: THE INFANCY OF THE PLAINTIFF does not change either the degree of care or diligence to be used by the defendants in the management of their cars and engines, or enhance the measure of damages to be adopted by the jury.

THE RULES REGULATING THE RIGHTS AND DUTIES OF PERSONS, NATURAL AND ARTIFICIAL, to each other must be uniform ; they cannot vary according to the years or degree of intellect of natural persons without producing an uncertainty in the law destructive of all principle.

APPEAL from the Superior Court of Baltimore City.

This suit was brought to the September term of the Superior Court of Baltimore City, 1861, by Jas. Coughlan, the next friend of Patrick Bannon, a minor, about seven years of age, to recover $3,000 damages for injuries sustained by the latter through the wrongful act, neglect or default of the Baltimore and Ohio Rail Road Company or its agents, on the 13th of October, 1860. The declaration contains three counts, to which the defendants pleaded " not guilty."

*1st Exception.*—At the trial of the cause the plaintiff to maintain issue on his part joined, proved that on the 13th of October, 1860, being then about the age of seven years, he was injured by the cars of the defendants, and his right hand permanently maimed by being crushed by the passage of the wheels of said cars over it, cutting off the forefinger, and rendering him otherwise unfit for manual or mechanical labor.    The plaintiff further proved that the said injury occurred near the front of his mother's house, which is located, with a number of others, on Locust Point, within a " Y " on the Locust Point Branch of said road, and then, for the purpose of showing negligence on the part of the company's agent, the plaintiff offered to prove that it was the daily practice of said agents, for many months before the happening of said injury, to back by the power of a locomotive large trains of iron coal cars of from forty to fifty cars, around a curve in a deep cut, by which backing a portion of the train of cars came around said curve and passed in front of the house of the plaintiff, and over the place where said injury happened ; and the plaintiff accompanied said offer with further evidence to show that during . the said backing of said cars as aforesaid, it was the daily practice of the employees and agents of said company, as aforesaid, to remain on or near the locomotive while it was engaged in backing the train of cars, and that said employees and agents could not from their position see the said road or any obstruction thereon, in the rear of the train, as it was so backing, and that no lookout or brakesman was ever stationed on the hindmost of said cars, as they had been daily backed around said curve to the point where said injury occurred ; but the Court rejected said offered proof, being of the opinion that the evidence must be confined to the mode in which said cars were managed at the time of the occurrence of the injury as complained of, and thereupon the plaintiff excepted.

*2nd Exception.*—After the evidence stated in the foregoing bill of exceptions, made a part hereof, the plaintiff, to support the issue on his part, offered in evidence by —— *Nunaven*, that he was a police officer of the city of Baltimore, on duty at Locust Point on the 13th of October, in the year 1860 ; that he knew the plaintiff, and that his mother, Mrs. Coughlan, lived at the corner of Towson and Marriott streets, where she kept a grocery ; that the Baltimore and Ohio Rail Road passed from Nicholson street by a semi-circular track into Marriott street, close by the house of Mrs. Coughlan, forming what is called a " Y ; " that the track passes through a cut between Towson and Haubert streets, in Marriott street, which latter street is not paved or used as a carriage road; that the next street to Towson street is Cooksie street, and that there are houses on Towson street within the " Y " which would prevent an engineman at the corner of Towson and Nicholson streets from seeing the end of the train if it extended past Mrs. Coughlan's house and store up Marriott street ; that the cars of the defendants were at times left standing across Towson street, in the way of persons passing from Mrs. Coughlan's and other houses within the " Y " to a school house, and to a spring beyond the school house, and that he had notified the agents of the defendants to remove them ; that hearing on the 13th October that an accident had happened in Marriott street he went to the spot, which was near the intersection of Cooksie and Marriott streets, and saw where a person had been dragged some distance, with marks of blood upon the ground and rails.    The plaintiff further proved by *Joshua Wright* that he was on the spot immediately after the accident happened, and saw where the plaintiff lay, some twenty-five yards from the end of the train ; that his brother had been killed and dragged that distance, and that there were no agents of the defendants

about at the time.    Witness aided in separating the cars so as to extricate the body of the boy that was killed.

Testimony to the same effect was given by *Michael Noonan* and —— *Davis.*

The plaintiff further proved by *Dr. Inloes* that he was the physician who attended the plaintiff and removed the forefinger of the right hand and dressed the second and third fingers, which were mashed and will remain permanently deformed ; that there is no grasp in the hand, the power being lost in consequence of the accident ; that the plaintiff was confined to bed three or four weeks, and there was a tendency to lockjaw, which required medical control, and that no other injury was done to the hand beyond that described ; and although the remaining fingers would improve by use, they were in the opinion of witness permanently injured, and the plaintiff incapacitated from the free use of them for life.

The defendants proved by *Henry Linn,* a competent witness, that he saw the accident when it occurred ; that the plaintiff, with his two brothers, were playing on the common near the intersection of Marriott and Cooksie streets, when the end of the train came backing round Mrs. Coughlan's corner into Marriott street ; that the boys at once left their play and ran to the cars and attempted to get on them ; that there were two on the track in front of the end car, who got on by holding with their hands on the bumper, with their feet on the break-bar ; that the little one, the plaintiff, was trying to get off or fell off, and knocked the other off, who was killed ; that witness did not see the plaintiff after the accident, his attention being attracted to the boy that was killed.    On cross-examination witness said that he was at the time he saw the little boys playing on the common some fifteen or twenty yards from them, and in company with two other boys larger than himself, to whom he said, boys let us take a ride ?   Whether the three

little boys of Mrs. Coughlan haerd him or not he could not swear. Witness saw no agents of the company about at the time of the accident. From the end of the train where it happened he could not see the engine. He did not hear a whistle blown or a bell rung. Was certain that both the boys, the one that was killed and the plaintiff, jumped on the cars.

The defendants further proved by *Mr. Stickes,* an employee of the defendants, that he knew the plaintiff and his two brothers; that he had often seen them getting on the cars, and had often. warned them off, and told them the risk they ran; that witness had also told their mother of their conduct in this respect, and had seen her whip them for it, but she said she could not prevent it.

*Parker,* brakesman of the train in question, a witness for the defendants, proved that he had driven the three children of Mrs. Coughlan from the cars, and had threatened to whip them, and had also told their grandmother of their conduct; that this was prior to the 13th October, and on frequent occasions, certainly on more than one occasion; and that at the time of the accident the speed of the train did not exceed two or two and a half miles an hour. On cross-examination, the witness described the duties of the agents connected with the train,—and stated, that there was no one at the end of the train at the time of the accident, and that it was no one's business to be there; that the signal for backing the train, three blasts of the whistle, had been given before the train was backed on this particular occasion; that there was no bell rung, and there was none on the engine to ring; and that the whistles were signals to the persons connected with the train.

*Ennes Toby,* a witness for the defendants, proved that he was the engineman on the occasion of the accident; that the engine was a regulating engine, employed in the making

8        v. 24.

up of trains at Locust Point, for another engine to take away ; that he was making up a train at this time, and adding the last cars ; that, on previous occasions, he had often seen the three boys getting on the cars when in motion, as well as in rest ; and that he has driven them from one part of the train, when they would run and get on another part.

On cross-examination this witness stated, that he always watched the crossing in front of Coughlan's house, but that, after the end of the train had passed it, he knew there was no crossing until the next paved street was reached, and anticipated no accident ; that from where his engine was on this occasion he could not see the end of the train, where the accident happened, nor did he know of the accident for half an hour afterwards ; that the speed of the train in backing at this time was very slow, and it could not have been otherwise, as there were fifty empty coal cars to be moved, and the grade up Marriott street was an ascending one, and it was as much as the engine could do to push the train backwards ; that it was going so slowly that any one, however young, could have got out of the way. The witness further proved, that the whistle was blown three times, as a signal for backing, before the accident, and he stated that, in his judgment, he had taken the utmost care under the circumstances ; that since the accident, he had, however, been more careful than before it, to see that there was no one in front of the end of the train in backing, and that there was no one of the defendants' agents at the end of the train when the accident occurred.

The plaintiff thereupon offered two, and the defendants four prayers, which are set forth in substance, in the opinion of this Court.

Which instructions of both plaintiff and defendants the Court, MARTIN, J., refused to give, but instructed the jury as follows :

1st. That if the jury find from the evidence that the Baltimore and Ohio Rail Road Company are the owners of the railroad track or tracks, and of certain cars and engines used thereon, at Locust Point, in the City of Baltimore, along which track or tracks said cars, and engines were drawn or propelled for the purposes and about the business of the said rail road company, then, in the movement, use and management of the said cars and engines, the said company is bound to exercise the utmost care and diligence which it was within their means and power to employ, to prevent accidents endangering the life or lives of the people and inhabitants of the said city ; and if the jury find that the plaintiff was run over and injured by the defendants' cars, as described by the witnesses, and that if the defendants, in the use and management of their cars and engines, had exercised the highest degree of care and diligence which it was within their means and power to employ, the said accident could have been prevented, then the plaintiff is entitled to recover in this action; but, although the jury may find that the said accident could have been prevented by the use of such care and diligence on the part of the defendants, yet the plaintiff is not entitled to recover, if the jury believe the accident could have been avoided by the exercise of that degree of care by the said plaintiff, which was, under the circumstances, to be naturally and reasonably expected from one of the plaintiff's age and intelligence, or by due care and diligence on the part of the mother.

2nd. That if, under the first instruction, the jury shall find a verdict for the plaintiff, they are not at liberty to give, upon the evidence in this case, against the defendants, exemplary, punitive or vindictive damages, but in estimating the damages they are to consider the health and condition of the plaintiff before the injury complained of, as compared with his present condition in consequence of the

said injury, and whether the said injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those mechanical employments and pursuits for which, in the absence of the said injury, he would have been qualified ; and also the physical and mental suffering to which he was subjected by reason of the said injury, and to allow such damages as, in the opinion of the jury, will be a fair and just compensation for the injury which the plaintiff had thus sustained.

To which refusal of the Court to grant the defendants' prayers, and to the granting of the Court's instructions, the defendants, by their counsel, prayed leave to except, and the plaintiff's counsel, in like manner, prayed leave to except to the Court's refusal to grant said prayer of the plaintiff, and to the instructions given by the Court. Whereupon both plaintiff and defendants appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN, and WEISEL, J.

*A. S. Ridgeley* and *Robert J. Brent* for Coughlan and Bannon :

I. The Court below erred in refusing to admit the testimony as offered in the plaintiff's first bill of exceptions.

1st. Because it contained some evidence from which the jury might infer that the cars were backed, and the manner of such backing, on the occasion in question, inasmuch as it was the defendants' custom so to back them in making up its trains.

2nd. Because the evidence offered tended to show a general recklessness and indifference to human life, which it was proper for the jury to consider, in connection with the question of damages. *Day vs. Woodworth,* 13 *How.*, 371.

II. The first instruction of the Court below was erro-

neous, for the reasons stated in the appellant's argument, touching the first instruction, in the case of *Coughlan vs. Balto. & Ohio R. R., supra, p.* 84. *Redfield on Railways,* 337, *Pierce,* 278. *Lynch vs. Nurdin,* 41 *Eng. C. L. Rep.,* 422, (1 *Q. B.* 36.) 22 *Vermont R. R.* 213. 19 *Ver.* 407. 19 *Conn.* 566.

III. This action not being founded on the statute, but on common law principles for damage done to the plaintiff, an infant of seven years, we are to look, in the assessment of damages, to the rules of the common law which allow not only actual damages and *solatium* for the sufferings of the plaintiff, but such exemplary damages as the jury may think commensurate to the reckless and wanton conduct of the defendants' servants, and shall also contend that the Court below erred in its second instruction to the jury, in restraining them on the evidence in the case from the infliction of exemplary damages proportioned to the degree of negligence found to exist on the part of the defendants. *Farrish vs. Reigle,* 11 *Grattan,* 697. *Hopkins vs. Atl. & St. Law. R. R.,* 36 *N. H.,* 16 *to* 19. *Day vs. Woodworth,* 13 *How.,* 371. *Vicksburg Rail R. Co. vs. Patton,* 31 *Miss.,* (2 *Georg.*) 156. *Sedgwick on Measure of Damages,* 36— 477 *and note.*

What would be ordinary neglect on the part of the defendants, as towards an adult plaintiff, would be gross neglect as towards a child. *Robinson vs. Cone,* 22 *Ver.,* 224. *Beers vs. Housatonic R. R.,* 19 *Conn,* 566.

Any negligence in a case of this kind is gross negligence. *Stokes vs. Saltonstall,* 13 *Peters,* 181. *Whipple vs. Walpole,* 10 *N. H.,* 130. *Stockton vs. Fry,* 4 *Gill.* *Sedgwick on Damages,* 454. *Koutz vs. Brown,* 16 *B. Monroe,* (*Ky.*) 577. *City of Chicago vs. Mayor,* 18 *Ill.,* 349. *Johnson vs. Hud. River R. R.,* 6 *Duer,* 638. *Oldfield vs. N. Y. & Har. R. R.,* 4 *Kernan,* 317. *Penn. R. R. vs. Zebe et al.,* 33 *Penn.,* 330. *Riely's Case,* 31 *Penn.,* 372, *also* 361.

In the event of an affirmance of the judgment as against the defendants on their appeal in this case, the plaintiff will abandon his exceptions. *Emory & Galt vs. Owings, &c.,* 3 *Md. Rep.,* 184. *Boehme vs. Carr,* 3 *Md. Rep.,* 210. 9 *Gill,* 376. *Garrett vs. Dickerson,* 19 *Md. Rep.,* 446.

*J. H. B. Latrobe,* for the appellee, relied on the authorities cited by him in the preceding case.

Bowie, C. J., delivered the opinion of this Court.

These appeals are taken from the rulings of the Court below, excluding certain evidence offered on the part of the appellant, Bannon, and rejecting certain instructions offered by the plaintiff and defendants, and the granting of others in lieu thereof by the Court, from which rulings each party appealed.

The cause of action, is injury sustained by the plaintiff, through the alleged wrongful act, neglect or default of the defendants or their agents, whilst moving their engine and cars in reversed order, over a semi-circular track called a "Y," on the Locust Point branch of the defendants' road. After evidence of the injury, for the purpose of showing negligence, the plaintiff proposed to prove it was the daily practice of the defendants to move their cars without a guard at the rear of the train over the "Y," which was so situated that the engineer at the engine could not see the rear, which evidence the Court rejected, being of opinion that the testimony must be confined to the mode in which the cars were managed at the time of the occurrence of the injury complained of; which constitutes the ground of the plaintiff's first exception.

There can scarcely be a question about the propriety of the Court's decision in this exception.

The general conduct of the defendants was not in issue. They were not required to meet such an investigation by

the pleadings. The acts and omissions of their servants and agents at other times, furnished no legitimate evidence of their conduct upon the particular occasion referred to ; and if they did, the safe conduct of the cars, for a long time before, without injury, would rather tend to mitigate than inflame the injury, showing there was no danger to the community in that mode of managing the cars. The evidence was collateral, and incapable of affording any reasonable presumption or inference as to the matters in issue and properly excluded. *Vide* 1 *Greenlf.*, *sec.* 52. The first and second prayers of the plaintiff, referring exclusively to the measure of damages, will be considered in connection with the instruction of the Court upon that subject.

The series of instructions offered by the defendants, substantially affirms :

1st. If the place where the accident happened was not a thoroughfare and used as such, or being crossed at the time by the plaintiff, and the cars were moving at a speed which would have permitted either adult or child to have avoided them, had he been using the street as a thoroughfare, or crossing the same, if he had used such diligence as was reasonably to have been expected of him, then the plaintiff is not entitled to recover.

2nd. If the plaintiff was just before the accident playing in a place of safety, and seeing the cars, ran and jumped on them, and fell off and was injured, he is not entitled to recover, although the jury believe the defendants did not use the care and diligence that would have prevented him from getting on the cars.

3rd. If in addition to the above facts, the plaintiff had been warned, and was of an age to understand such warning, and to know he was doing wrong, he is not entitled to recover, although the defendants had not used such care and diligence as would have prevented the plaintiff from getting on the cars.

4th. If at the time of the accident the defendants were not complying with the ordinances offered in evidence regulating the use of locomotive engines in the City of Baltimore, yet the plaintiff is not entitled to recover, if the jury believe that his conduct was the immediate cause of the accident and his injury, the result of a want on his part of that degree of care which was under all the circumstances naturally and reasonably to be expected in one of the plaintiff's age and intelligence.

The instruction of the Court is silent as to the place being a thoroughfare, but affirms, if the defendants were owners of the track along which their cars were drawn or propelled about the business of the company, then, in the management and movement of said cars the company *is bound to exercise the utmost care and diligence* which it was within their means and power to employ to prevent accidents, endangering the lives of the people of the city ; and if the jury find the plaintiff was injured by the defendants' cars, and if the defendants in the use of their cars, had exercised the *highest degree of care* and diligence which it was within their means and power to employ, the said accident could have been prevented, then the plaintiff is entitled to recover ; but, although the jury may find that the said accident could have been prevented by the use of such care and diligence on the part of the defendants, yet the plaintiff is not entitled to recover, if the jury believe the accident could have been avoided by the exercise of that degree of care by said plaintiff, which was, under the circumstances, to be naturally and reasonably expected from one of the plaintiff's age and intelligence.

The theory of the defendants' prayers, taken collectively, is, that if the injury was owing to the want of the reasonable care and diligence on the part of plaintiff, the defendants are not liable ; although they might have prevented the accident by the exercise of the utmost care and diligence.

The theory of the Court's instruction is, that the defen-
dants, in the movement and management of their engines
and cars, were bound to use the utmost care and diligence,
and if, by so using it, the accident might have been pre-
vented the plaintiff is entitled to recover, unless the jury
believe the accident could have been avoided by the exercise
of such care as was reasonably to have been expected from
the plaintiff.

The difference between the two propositions is, that
under the Court's instruction the defendants were bound to
use the utmost care and diligence, and if the defendants
were not in default at all, and the plaintiff was, he cannot
recover, under the defendants' prayer, although the
defendants were in default, yet the plaintiff cannot recover
if his own want of care, etc., was the cause of his injury.

In the preceding case of the *State, use of Coughlan, vs. B.
& O. R. R. Co., supra, p.* 84, we have pointed out the different
degrees of diligence required by law, of carriers of passen-
gers, etc., towards those with whom they are in the relation
of carriers by contract, or trust and confidence, and the
degree of diligence required of them towards third persons,
merely in the exercise of their legal rights. In the for-
mer case, as lately decided by this Court in the case of
*Worthington vs. The Baltimore and Ohio Rail Road*, the
defendants are required to use the utmost care and dili-
gence, but in the latter they are required only to exercise
such care and skill as persons of ordinary prudence practice
about their business. *Vide* 8 *Barb.* 368. *Rail Road vs.
Norton*, 24 *Penn. Rep.*, 465.

WILLARD, Justice, delivering the opinion of the Court,
in the case of *Brand vs. The Troy and Schenectady Rail
Road Company*, uses this emphatic language, " that a
passenger on board a stage coach or rail road car, and a
person walking on foot in the street, do not stand in the
same relation to the carrier. Towards the one the lia-

bility of the latter springs from a contract, express or implied, and upheld by an adequate consideration. Towards the other he is under no obligation but that of justice and humanity. While engaged in their lawful business, both are bound to use a degree of caution suited to the exigencies of the case; the one to avoid the occasioning an injury, and the other to avoid receiving it. What that degree of caution is, which they are respectively bound to exercise, may be seen by a brief consideration of the degrees of care which the law exacts from persons engaged in the various pursuits of life." After reviewing the different degrees of diligence and care required of bailees and others, he proceeds:

"In general the highest diligence is not exacted of any person except when a compensation is paid for the service, or the party injured was in the power, and under the control of the defendants as in the case of stage passengers; or the party officiously obtrudes his services upon another; or is the sole party receiving a benefit from the act, or the party occasioning the injury, was in the wrong place, or engaged in an unlawful calling." If both parties stand on an equality as to means of avoiding the accident, and both are engaged in a lawful employment, it is hard to conceive how more than ordinary diligence can be demanded. 8 *Barbour Sup. Ct. Rep.*, 378, 380.* * In illustration of the same principle, "one who was engaged upon the track of a railway, by the direction of the superintendent of the company, and was injured by the engine of another company lawfully upon the track, could not recover of the latter company, although their engineer was guilty of carelessness, being himself also in fault." *Railroad vs. Norton*, 24 *Penn. Rep.*, 465.

This language was used in the case of an injury inflicted on a woman while walking on the track of a railway in the streets of a city.

The first instruction granted by the Court required the jury to find the exercise of the utmost care and diligence which it was within the means and power of the defendants to employ, to prevent accidents endangering the lives of the people, to exonerate the defendants from liability, unless they should find the accident could have been avoided by the exercise of that degree of care by the said plaintiff, which was, under the circumstances to be expected from one of the plaintiff's age. This was exacting more than the law required of the defendants, as it would seem from the authorities cited, and therefore erroneous.

The second instruction given by the Court was intended as a substitute for the first and second offered by the plaintiff, prescribing the kind and measure of damages. These, upon the assumption that the injury was caused by gross negligence of the defendants, authorized the jury to allow "such punitive or exemplary damages, as in their discretion they might think right and proper under the circumstances." 2d. That they were not limited to the actual pecuniary injury they may believe the plaintiff has suffered, but were at liberty to award damages for all future pecuniary damages which will result from the injury, and also such damages as would be an adequate compensation for the pain and illness consequent upon the injury complained of.

The first of the plaintiff's prayers was liable to objection for the unlimited discretion it proposed to give the jury, without any guide to its exercise ; the pernicious tendency of which practice has been so strongly exposed in the cases cited by this Court in the case of *The State, use of Coughlan, vs. The B. & O. R. R. Co., supra, p.* 84. Without adopting or denying the proposition so elaborately discussed by the learned jurists, Sedgwick and Greenleaf, that "wherever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, instead of adhering to the

system or even language of compensation, the law permits the jury to give what it terms punitive, vindictive, or exemplary damages,'' its application must entirely depend upon the circumstances of the case and the evidence in the cause. There is no element of fraud, malice or oppression in this case, but the inquiry is, was there gross negligence ?

Gross negligence is a technical term ; it is the omission of that care ''which even inattentive and thoughtless men never fail to take of their own property,'' it is a violation of good faith. *Angel on Carriers, sec.* 10. It implies malice and evil intention. Hence in all questions of punitive or vindictive damages, the intention of the defendants is a material consideration.

''What is, and what is not gross negligence, is often a mixed question of law and fact.'' *Angel on Carriers, sec.* 22, 27. *Pierce on Rail Roads,* 282, 283. Whether malice or gross negligence existed, is a question for the jury ; but what facts are sufficient to prove malice or gross negligence, is in such cases the province of the Court to determine.

''The Judge is to inform the jury as to the degree of diligence, or care or skill which the law demands of the party, and what duty it devolves on him, and the jury are to find whether that duty has been done. *Hunter vs. Caldwell,* 11 *Jur.,* 770. 10 *Adol. and Ell.,* 69. 11 *M. and W.,* 817, and other cases cited by *Greenleaf, note* 1 *to sec.* 49, *page* 70, 11*th edition.*

The law requiring of the defendants only ordinary care and diligence towards third persons, not passengers or connected with the defendants by contract, trust or confidence ; there was no evidence of gross negligence, which would warrant the Court to instruct the jury, that if they should find such on the part of the agents of the defendants, they might allow punitive or exemplary damages. The prayer was for this additional reason properly rejected.

Bannon *vs.* Baltimore & Ohio R. R. Co.

The case being divested of all aggravating circumstances, the second instruction granted by the Court enumerated all the elements of compensatory damages which properly belonged to it.

The infancy of the plaintiff does not change either the degree of care or diligence to be used by the defendants in the management of their cars and engines, or enhance the measure of damages to be adopted by the jury. The rules regulating the rights and duties of persons natural and artificial to each other, must be uniform ; they cannot vary according to the years or degree of intellect of natural persons, without producing an uncertainty in the law destructive of all principle. For this reason, and others which might be in the conflict of suggested decisions, we think those of *Hartfield vs. Roper*, 21 *Wend.*, 615, and *Willetts vs. Buffalo & Rochester R. R.*, 14 *Barbour*, are to be preferred to *Lynch vs. Nardin*, 1. *Q. B.*, 29.

In *Hartfield vs. Roper* (21 *Wend.*, 615,) the action was by an infant two years old. He was in the sleigh path alone, and was run over and injured. It was held that no action would lie if the injury was not voluntary, or from culpable negligence. The rule of negligence was applied to the case, and the want of care on the part of the parents was regarded as a want of care on his part.

*Willetts'* case was that of an infant lunatic left by his father in the cars, and put out by the conductor, ignorant of his lunacy, in consequence of his failing to show his ticket ; afterwards he was run over by another train and killed. It was held the negligence of the parent was the negligence of the child, and his administrator could not recover. The general principle is thus announced : "all persons incapable of diligence should, and usually have guardians to care for them ; upon them the duty of care and diligence is devolved, and their negligence must in

Bannon *vs.* Baltimore & Ohio R. R. Co.

law be regarded as the negligence of the incapable infant or lunatic when they have been injured in cases arising between them and third persons acting without notice.''

It results from what has been said, that the defendants were bound, in the management of their engines and trains, to use such diligence and care, as prudent and discreet persons would use and exercise on such occasions, having due regard to the safety of property and persons with such motive power and trains ; and if, owing to the absence of such diligence and care the plaintiff was injured, he was entitled to recover, unless from his own negligence or want of reasonable care, he brought the injury upon himself.

The defendants' first, second, third and fourth prayers are defective, in not presenting this alternative distinctly to the jury. They enumerate certain facts, and specify a certain want of care in preventing the plaintiff from getting on the cars, but do not refer to the absence of ordinary care and diligence in the general management of the engine and train on that occasion, as an element of the condition on which would necessarily depend the right of the plaintiff to recover.

The conclusion from the foregoing is, that the Court below was correct in rejecting the evidence set out in the plaintiff's exception, and in rejecting the plaintiff's and defendants' prayers ; and also in giving its second instruction ; but that there was error in the first instruction granted by the Court, hence the judgment below must be reversed and a *procedendo* awarded.

*Judgment reversed and*

*Procedendo awarded.*

(Decided February 28th, 1866.)