Raymond A. **STANCILL**, Allyson B. Kefauver, **Personal Representative of the Estate of John William Kefauver, Deceased, Appellants**

v.

**POTOMAC ELECTRIC POWER CO.,**
A Corporation.

No. 82–1091.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 3, 1982.
Decided Oct. 2, 1984.

Stanley M. Karlin, Bethesda, Md., with whom Henry E. Weil, Rockville, Md., was on the brief, for appellants.

Martin H. Freeman, Washington, D.C., with whom Alan S. Feld, Washington, D.C., was on the brief, for appellee. Joseph D. Bulman, Washington, D.C., also entered an appearance for appellee.

Before ROBINSON, Chief Judge, MIKVA, Circuit Judge, and MacKINNON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

Appellants protest the District Court's award of summary judgment to Potomac Electric Power Company (Pepco) in a diversity action for damages arising out of an electrical accident in Maryland. Raymond A. Stancill was injured and John William Kefauver was killed when an aluminum ladder they were handling came into contact with an uninsulated high-voltage distribution line owned and maintained by Pepco. The District Court ruled that they assumed the risk by failing to comply with Maryland's High Voltage Line Act,[1] and thus foreclosed any recovery. We affirm, likewise, on the basis of assumption of risk, but for a somewhat different reason from that stated by the District Court.

## I

Stancill and Kefauver were skilled in the roofing and guttering trade,[2] and experienced in the use of aluminum ladders.[3] In 1980, they were hired by Charles and Lisa

---

1. Discussed *infra* note 35.

2. Appellee's Appendix (Ae.App.) 35, 39, 40, 55–58. See also note 3 *infra*.

3. Stancill had worked with aluminum ladders for at least seven years prior to the date of the

accident. A house painter for two years, he had used them in the exterior painting of more than 50 homes. Ae.App. 47, 48–49. Knowing that as conductors of electricity they could become hazardous, Ae.App. 49, 51, he customarily took precautions against potential shock from overhead

Itte to install gutters and downspouts at their home in Takoma Park, Maryland.[4] Neither Stancill nor Kefauver notified Pepco that at some point they would be working on a gutter within ten feet of the distribution line.[5]

The two men arrived at the Itte home on May 24, 1980, and unloaded two 40-foot aluminum extension ladders from their truck. They then commenced the process of measuring and installation. As they began to maneuver one of the ladders[6] against the house, Stancill checked for overhead power lines.[7] He saw the distribution line strung diagonally across the front lawn,[8] and noticed that it had a different appearance from the service lines extending from a utility pole to the house.[9] Kefauver, holding the ladder, began to position it, and in the process the ladder either touched the distribution wire or came within arcing distance of it. Stancill suffered third-degree burns and Kefauver was electrocuted.[10]

Appellants[11] brought suit in the District Court. Jurisdiction was invoked solely on diversity of citizenship.[12] Appellants charged gross negligence on Pepco's part, and sought compensatory and punitive damages. After extensive discovery, Pep-

power lines. Ae.App. 52–54. Later, Stancill took jobs successively with two companies engaged in the roofing and guttering business, Ae.App. 55, 58, in which metal ladders were used routinely. Ae.App. 56. He worked on more than 100 jobs with aluminum ladders which, at least two-thirds of the time, were 32 feet or longer. Ae.App. 59–61. On each job he would locate the electric service lines and was careful to keep ladders away from them, Ae. App. 56, 61; "[w]e always need to be careful of them," he said, "it was just where they were positioned as to the house as to where to move the ladder—not to come in contact with them." Ae.App. 56. He would also look for the pole-to-pole distribution lines to make sure that they were a safe distance from where he was working. Ae.App. 57, 62. Stancill enjoys perfect vision. Ae.App. 44.

Similarly, Kefauver's "main line of business for seven years was with roofing and guttering." Ae.App. 39. There was no indication that Kefauver had any visual impairment on the date of the accident.

**4.** The Itte's hired Capitol Roofing Company, Inc., to perform the work. Capitol subcontracted the job to Kefauver, who employed Stancill to assist him. Ae.App. 63–64.

**5.** See note 35 *infra*.

**6.** On the side of the ladder, approximately four feet from the bottom, was a prominent orange, black and white decal warning "DANGER— WATCH FOR WIRES—THIS LADDER CONDUCTS ELECTRICITY." Ae.App. 37, 42, 85. Bracketing the words "THIS LADDER CONDUCTS ELECTRICITY" were orange depictions of lightning bolts. Ae.App. 85. A second decal on the ladder, flagged by the word "CAUTION," provided a guide for positioning the ladder and, at the bottom in bold letters, the admonition "READ ADDITIONAL INSTRUCTIONS ON LADDER." Ae.App. 86–87.

**7.** Ae.App. 69, 76.

**8.** Ae.App. 76. The line was installed in 1935. Suspended 25 feet above the ground, it was unobscured by structures or foliage, and plainly visible from the area below. Ae.App. 22, 24–25, 26–28. At its closest point to the house, the line had a 7-foot, 5-inch clearance from the left front corner of the roof overhang. Ae.App. 21. After 40 years without apparent mishap, one Wesley Howard brought an aluminum ladder into contact with the distribution line and sustained an electrical shock and injuries. Howard sued Pepco, alleging negligence as the cause of his injuries. The court found that, assuming that Pepco was primarily negligent, Howard was guilty of contributory negligence as a matter of law, and entered summary judgment against him. *Howard v. Sylvester*, Civ. No. R–78–1851 (D.Md. Dec. 5, 1980), *aff'd*, 688 F.2d 832 (4th Cir.1982) (per curiam).

**9.** Ae.App. 83. Stancill testified that Kefauver also saw the distribution line. Ae.App. 77.

**10.** Because of the fatality, the City of Takoma Park Police Department and the Maryland Public Service Commission investigated. The police found two "fray marks" on the distribution wire at 9 feet, 2 inches from the closest edge of the roof overhang, and 25 feet, 3 inches vertically from the ground. Ae.App. 15, 19. The Commission found no violation of its regulations by Pepco. Ae.App. 92–96. The distribution line, in terms of location and condition, met the Commission's standards, which incorporate those set forth in the National Electrical Safety Code. Ae.App. 92–95, 97.

**11.** Joined with Stancill as an appellant is Allyson B. Kefauver, the surviving spouse of John William Kefauver and the personal representative of his estate.

**12.** See 28 U.S.C. § 1332(a)(1), (d) (1982).

co moved for summary judgment, and the court granted the motion.[13] The court concluded that the failure of Stancill and Kefauver to abide by Maryland's High Voltage Line Act[14] constituted an assumption of the risk and barred recovery.[15] This appeal followed.

## II

The substantive law applicable to this diversity action is that of Maryland.[16]

The law of that state recognizes potential liability for harm caused by negligence, whether simple[17] or gross[18] in character. Appellants alleged that Pepco was grossly negligent in maintaining the uninsulated high-voltage distribution line.[19] An action based on either type of negligence is defeated by proof that the plaintiff assumed the risk[20] or, perhaps, that he was contributorily negligent.[21]

**13.** *Stancill v. Potomac Elec. Power Co.,* Civ. No. 80–3160 (D.D.C. Jan. 6, 1982) at 1–2, Appellants' Appendix (A. App.) 186–187.

**14.** Discussed *infra* note 35.

**15.** *Stancill v. Potomac Elec. Power Co., supra* note 13, at 1, A. App. 76.

**16.** In diversity cases, federal courts in the District of Columbia apply the substantive law of the forum with respect to those issues that are outcome-determinative. *Lee v. Flintkote Co.,* 193 U.S.App.D.C. 121, 124 n. 14, 593 F.2d 1275, 1278 n. 14 (1979) (explicitly adopting analogously the principles of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), for federal courts in the District of Columbia). The forum's choice-of-law rules are substantive for *Erie* purposes, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480 (1941); *Steorts v. American Airlines, Inc.,* 207 U.S.App.D.C. 369, 372, 647 F.2d 194, 197 (1981); consequently, the District of Columbia rules determine whether Maryland or District of Columbia law governs the instant case. The District of Columbia Court of Appeals has adopted the approach of the Restatement (Second) of Conflict of Laws § 145 (1971) in negligence cases. *Myers v. Gaither,* 232 A.2d 577, 583 (D.C.App.1967). Under that section of the Restatement, the court

considers as important contacts, *inter alia*, the place of the injury, the place where the contact occurred, the domicile of the parties, and the place where the relationship between the parties, and the place where the relationship between the parties is centered. In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relative purposes of the tort rules of the interested states.

See also *Carr v. Bio-Medical Applications,* 366 A.2d 1089, 1093 n. 3 (D.C.App.1976) (approving in negligence case the choice-of-law approach taken in *Myers* ).

Applying these principles, we agree with the District Court, *Stancill v. Potomac Elec. Power Co., supra* note 13, at 2–3, A.App. 187–188, that the District of Columbia courts would look to Maryland law in this action. Maryland is the place where the accident and the injuries oc-

curred, the domicile of appellants, and the place where the relationship of the parties was centered. Maryland obviously has a strong interest in compliance with its statute, see note 35 *infra,* and caselaw, see notes 21, 32 *infra,* concerning conduct relative to electric power lines. No countervailing interest whatsoever of the District of Columbia is apparent.

**17.** See, *e.g., Myers v. Montgomery Ward & Co.,* 253 Md. 282, 291, 252 A.2d 855, 861 (1969); *Aleshire v. State,* 225 Md. 355, 365, 170 A.2d 758, 763 (1961); *Jackson v. Pennsylvania R.R.,* 176 Md. 1, 5, 3 A.2d 718, 721 (1939); *Ottenheimer v. Molohan,* 146 Md. 175, 185, 126 A. 97, 100 (1924); *Geiselman v. Schmidt,* 106 Md. 580, 584, 68 A. 202, 204 (1907).

**18.** See, *e.g., Romanesk v. Rose,* 248 Md. 420, 425, 237 A.2d 12, 15 (1968); *White v. King,* 244 Md. 348, 361–362 n. 2, 223 A.2d 763, 771 n. 2 (1966); *Bannon v. Baltimore R.R.,* 24 Md. 108, 124 (1866); *Hall v. Hague,* 257 A.2d 221, 223 (D.C.App.1969) (applying Maryland law). Gross negligence is defined as a " 'wanton or reckless disregard for human life or for the rights of others,' " *White v. King, supra,* 244 Md. at 361–362 n. 2, 223 A.2d at 771 n. 2, quoting *Johnson v. State,* 213 Md. 527, 531, 132 A.2d 853, 855 (1957), including "the omission of that care which even inattentive and thoughtless men never fail to take of their own property." *Bannon v. Baltimore R.R., supra,* 24 Md. at 124.

**19.** Complaint ¶ 13, *Stancill v. Potomac Elec. Power Co.,* Civ. No. 80–3160 (D.D.C.) (filed Dec. 10, 1980), A.App. 11.

**20.** *Gordon v. Maryland State Fair, Inc.,* 174 Md. 466, 469, 199 A. 519, 521 (1938); *Pinehurst Co. v. Phelps,* 163 Md. 68, 73, 160 A. 736, 738 (1932); *Maryland State Fair & Agriculture Soc'y v. Lee,* 29 Md.App. 374, 378, 348 A.2d 44, 48 (1975). The Maryland Court of Appeals has adopted Professor Prosser's definition of assumption of risk:

In its primary and proper sense, it means that the plaintiff has consented to relieve the defendant of an obligation of conduct toward him, and to take his chance of injury from a known risk. It refers to the situation in

Accepting as true, for the time being, appellants' allegation that Pepco was grossly negligent, Pepco asserts that Stan-

cill and Kefauver assumed the risk as a matter of Maryland law.[22] Since the Dis-

which the plaintiff, with full knowledge of the risk, voluntarily enters into some relation with the defendant involving danger to himself through the defendant's conduct. He makes the choice at his own risk, and is taken to consent that the defendant shall be relieved of responsibility. The legal position is then that the defendant is under no duty to protect the plaintiff. It is not a question of any negligence on the part of the plaintiff, who may be acting quite reasonably, and it is immaterial whether he has exercised proper caution.
*Bull S.S. Line v. Fisher,* 196 Md. 519, 524, 77 A.2d 142, 145 (1950), quoting W. Prosser, Law of Torts § 51, at 377 (1st ed. 1941). See also *Hooper v. Mougin,* 263 Md. 630, 635, 284 A.2d 236, 239 (1971); *Kasten Constr. Co. v. Evans,* 260 Md. 536, 544, 273 A.2d 90, 94 (1971); *Gibson v. Beaver,* 245 Md. 418, 421–422, 226 A.2d 273, 275 (1967).

**21.** *Harrison v. Montgomery County Bd. of Educ.,* 295 Md. 442, 451, 456 A.2d 894, 898 (1983); *Menish v. Polinger Co.,* 277 Md. 553, 563, 356 A.2d 233, 238 (1976); *Hooper v. Mougin, supra* note 20, 263 Md. at 633–634, 284 A.2d at 238; *Abraham v. Moler,* 253 Md. 215, 218, 252 A.2d 68, 70 (1969); *Gutterman v. Biggs,* 249 Md. 421, 423, 240 A.2d 260, 261 (1968). Maryland law defines contributory negligence as " 'conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm.' " *Menish v. Polinger Co., supra,* 277 Md. at 559, 356 A.2d at 236, quoting *Craig v. Greenbelt Consumer Serv., Inc.,* 244 Md. 95, 97, 222 A.2d 836, 837 (1966). Contributory negligence has often barred recovery in Maryland electrical-shock cases where liability was sought to be grounded on negligence. *Frazee v. Baltimore Gas & Elec. Co.,* 255 Md. 627, 632–634, 258 A.2d 425, 427–429 (1969) (house painter, who had warned his crew about hazards of overhead electrical lines, was contributorily negligent as a matter of law when he brought his 30-foot aluminum extension ladder into contact with a high-voltage wire); *Driver v. Potomac Elec. Power Co.,* 247 Md. 75, 81–82, 230 A.2d 321, 325 (1967) (17-year-old, with eighth grade education, whose affidavit stated that he was not aware that power line he saw was conducting electricity, held, on defendant's motion for summary judgment, contributorily negligent when he drove his well-digging rig into power line); *Southern Md. Elec. Coop. v. Blanchard,* 239 Md. 481, 490–491, 212 A.2d 301, 307–308 (1965) (individual who brought 10-foot television antenna into contact with high-voltage line found, as a matter of law, contributorily negligent). See

also *State v. Consolidated Gas Elec. Light & Power Co.,* 159 Md. 138, 150 A. 452 (1930); *State v. Eastern Shore Gas & Elec. Co.,* 155 Md. 660, 142 A. 503 (1928); *Mayor of Cumberland v. Lottig,* 95 Md. 42, 51 A. 841 (1902).

Nonetheless, appellants contend that contributory negligence is not available to Pepco as a defense in this case. They argue, Brief for Appellant at 4, that contributory negligence is not a bar to an action, such as this one, which is predicated upon gross negligence. Neither party, however, has directed us to any Maryland case expressly so holding, and our own review of Maryland caselaw might lead us to the conclusion that contributory negligence defeats claims based upon gross negligence, as well as those based upon simple negligence. Indeed, the Court of Appeals of Maryland recently observed that it is "the well-established law of this State that a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, *regardless of the quantum of a defendant's primary negligence.*" *Harrison v. Montgomery County Bd. of Educ., supra* note 21, 295 Md. at 451, 456 A.2d at 898. See also *Ladnier v. Murray,* 572 F.Supp. 544, 547 (D.Md.1983) (applying Maryland law to the effect that "contributory negligence is an absolute bar to recovery in a negligence case"). Although *Harrison* indicates that the defense of contributory negligence would be available to Pepco even had it conducted itself in a grossly negligent manner, we need not undertake to resolve the point, or to decide whether Stancill and Kefauver were in fact contributorily negligent. As we now discuss, we find that the record upholds the District Court's dismissal of appellants' action on the basis of assumption of risk.

**22.** Motion for Summary Judgment ¶ 3, *Stancill v. Potomac Elec. Power Co.,* No. 80–3160 (D.D.C.) (filed Oct. 30, 1981), A.App. 31. While the efficacy of the defense of contributory negligence to gross-negligence charges may be open to some doubt, see note 21 *supra,* assumption of the risk under Maryland law indubitably defeats a claim resting upon gross negligence. Once it has been established that the plaintiff assumed the risk, the defendant's negligent conduct, whether characterized as simple or gross, becomes irrelevant. " 'In its primary and proper sense, [assumption of the risk] means that the plaintiff has consented to relieve the defendant of an obligation of conduct toward him, and to take his chance of injury from a known risk.... The legal position is then that the defendant is under *no duty* to protect the plaintiff.' " *Bull S.S. Line v. Fisher, supra* note 20, 196 Md. at 524, 77 A.2d at 145, quoting W. Prosser, Law of

trict Court upheld Pepco in that regard,[23] our task is to determine whether, in the circumstances here, Maryland law sustains that defense.

█ The Maryland courts have identified three elements to be established before a risk will be deemed legally assumed. The defendant must show that the plaintiff (1) had knowledge of the risk of danger, (2) appreciated that risk and (3) voluntarily exposed himself to it.[24] Appellants argue that the evidence at trial did not measure up to these requirements.[25] We reject this contention.

█ A careful reading of the record discloses beyond doubt that both Stancill and Kefauver, within the contemplation of Maryland law, knew of the existence and location of the distribution line. Kefauver had visited the Itte home for the purpose of estimating a price for installation of new gutters and downspouts.[26] Surely, in conducting this survey, he had abundant opportunity to observe the unobstructed dis-

tribution line.[27] Moreover, Stancill testified that when he and Kefauver moved the ladder to the front of the house, Kefauver saw the line. Stancill further testified that he, too, saw the overhead power lines,[28] noticed the distance between the top of the ladder and the distribution line,[29] and even realized that the wire was uninsulated.[30] These undisputed facts dispel any notion that either man was unaware of this source of potential danger.

The record makes equally plain that both Stancill and Kefauver appreciated the risk posed by an aluminum ladder in close proximity to an energized high-voltage line. Maryland's standard on this score is objective: the risk is appreciated if " 'any person of normal intelligence in [the plaintiff's] position must have understood the danger.' "[31] And the Maryland high court has long considered electricity a generally-known and well-understood potential peril that anyone of adult age must be taken to comprehend.[32] Maryland law thus compels

---

Tort, § 51, at 377 (1st ed. 1941) (emphasis supplied). See also *Hooper v. Mougin, supra* note 20, 263 Md. at 635, 284 A.2d at 239; *Kasten Constr. Co. v. Evans, supra* note 20, 260 Md. at 544, 273 A.2d at 94; *Gibson v. Beaver, supra,* note 20, 245 Md. at 421, 226 A.2d at 276.

**23.** See note 13 *supra* and accompanying text.

**24.** See *Hooper v. Mougin, supra* note 20, 263 Md. at 635, 284 A.2d at 239; *Kasten Constr. Co. v. Evans, supra* note 20, 260 Md. at 544, 273 A.2d at 94; *Gibson v. Beaver, supra* note 20, 245 Md. at 422, 226 A.2d at 275. Assumption of risk "implies intentional exposure to a known danger, which may or may not be true of contributory negligence." *People's Drug Stores v. Windham,* 178 Md. 172, 186, 12 A.2d 532, 539 (1940). See also *Burke v. Williams,* 244 Md. 154, 157, 223 A.2d 187, 189 (1966).

**25.** Brief for Appellants at 6–12.

**26.** Ae.App. 88–89.

**27.** Ae.App. 77. Appellants assert that because Kefauver could not testify, his knowledge of the location of the distribution line is unclear. Brief for Appellants at 11. While our reading of the record dispels any question of Kefauver's actual knowledge, Maryland law imputes that knowledge to one who claims that he did not see an object which, under the circumstances involved, he would have seen had he but used his senses. See, *e.g., Fulton Bldg. Co. v. Stichel,*

135 Md. 542, 549, 109 A. 434, 437 (1920). So where, as here, actual knowledge of the location of a power line may not be absolutely certain, "the question ... does not have to rest upon whether or not [the person] had actual knowledge ... [because] the law rightfully charge[s] him with such knowledge." *Southern Md. Elec. Coop. v. Blanchard, supra* note 21, 239 Md. at 491, 212 A.2d at 307; see also cases cited therein.

**28.** Ae.App. 76.

**29.** Ae.App. 72.

**30.** Ae.App. 83.

**31.** *Gibson v. Beaver, supra* note 20, 245 Md. at 421, 226 A.2d at 275, quoting W. Prosser on Torts, § 55, at 303 (2d ed. 1955).

**32.** *Le Vonas v. Acme Paper Bd. Co.,* 184 Md. 16, 21, 40 A.2d 43, 45–46 (1944) stating:

Electricity is now used so universally ... that it is a matter of common knowledge that any line carrying electric current is dangerous to a more or less degree. The fact that a wire is charged with electric current is notice of danger, and any person mindful of his safety should treat it with caution. When a person voluntarily touches ... an electric wire, which he knows, or which a person of ordinary knowledge and experience would have

the conclusion that both men must be charged with appreciation of the risk.

█ It follows that Stancill and Kefauver voluntarily assumed the risk within the meaning of the applicable Maryland law. "When a person undertakes work which exposes him to obvious dangers which he knew or had the opportunity to know, he must" under the law of that state "be considered as having assumed such risks, and he cannot recover for any injuries resulting therefrom." [33] The case before us presents exactly that situation,[34] though certainly it need not have. Simply by complying with procedure specified in Maryland's High Voltage Line Act,[35] the risk presented by the distribution line could have been completely eliminated. In declining to pursue that alternative, Stancill and Kefauver, in the words of the Maryland court, "preferred convenience to safety and knowingly took the chance." [36] The District Court did not err when it held that appellants' action was barred by the Maryland doctrine of assumption of risk.[37]

The judgment appealed from is accordingly

*Affirmed.*

reason to believe, is sufficiently charged with electricity to be dangerous, ... it will be assumed as a matter of law that his own negligence contributed to the accident. Accord, *Driver v. Potomac Elec. Power Co., supra* note 21, 247 Md. at 81, 230 A.2d at 325 (knowledge of danger of electricity will be imputed to most plaintiffs). A very different sort of case was *Eastern Shore Pub. Serv. Co. v. Corbett,* 227 Md. 411, 423–424, 177 A.2d 701, 707–708 (1962) (plaintiff not charged with knowledge that service wires to unfinished building were alive, where building was supplied with power by a different set of temporary wires, electrical work on building had not yet been completed, and the service wires dangled from the masthead conduit).

**33.** *Le Vonas v. Acme Paper Board Co., supra* note 32, 184 Md. at 23, 40 A.2d at 46. See also *Benedetto v. Baltimore Gas & Elec. Co.,* 30 Md. App. 171, 176–178, 350 A.2d 712, 715–716 (1976).

**34.** The mere fact that Stancill and Kefauver were pursuing their livelihood is immaterial to the question whether they assumed the risk. In *Burke v. Williams, supra* note 24, 244 Md. at 158, 223 A.2d at 189, the court held that a deliveryman who was injured when he slipped on an icy walkway while making a delivery acted voluntarily notwithstanding that the walkway was the only means of access to the house

at which the delivery was to be made, and despite the claimed economic necessity of keeping his job. It is even clearer that the assumption of risk by Stancill and Kefauver was voluntary, for they could have avoided all danger from the distribution line by the simple expedient of taking statutorily-prescribed precautions. See note 35 *infra.*

**35.** Md.Code Ann. art. 89, §§ 58–63 (1957). A person contemplating the handling or erection of any equipment or apparatus within ten feet of a high-voltage line is required to notify the owner or operator of the line, *id.* § 61(a); and the latter is then required to take specified precautions, *id.* § 61(b), which may involve de-energization of the line or installation of physical barriers to prevent contact, *id.* § 60.

**36.** *Evans v. Johns Hopkins Univ.,* 224 Md. 234, 239, 167 A.2d 591, 594 (1961).

**37.** The District Court held that Stancill and Kefauver, by ignoring the state's High Voltage Line Act, assumed the risk as a matter of law. *Stancill v. Potomac Elec. Power Co., supra* note 13, at 1, A.App. 186. Since we conclude that their behavior considered in its entirety constituted an assumption of the risk, we do not reach the question on which the District Court's decision pivoted.