## DRIVER, ETC. *v.* POTOMAC ELECTRIC POWER COMPANY

[No. 404, September Term, 1966.]

76

*Decided June 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, MCWILLIAMS and FINAN, JJ.

*Jacob S. Levin* and *Frank B. Haskell, III,* with whom were *Mitchell, Clagett & Euwer* and *Applestein & Applestein* on the brief for appellant.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett, Powers & Channing* and *Martin H. Freeman,* and *Hamilton & Hamilton* and *Thomas A. Flannery* on the brief for appellee.

HORNEY, J., delivered the opinion of the Court.

In this case, where a workman (Arthur L. Driver) was injured when the boom of a well-digging rig came into contact with an electric transmission line while he and a co-worker [1] were operating the rig on the right of way of a power company (Potomac Electric Power Company), the question is whether the lower court erred in entering judgment as a matter of law in favor of the defendant against the plaintiff.

The plaintiff in essence alleged that the defendant was negligent in the construction and maintenance of its right of way and the poles and wires thereon in that the wires were not properly insulated and were allowed to hang too close to the ground and in that it failed to post warnings of the dangerous nature of the high voltage wires.

The defendant filed the customary general issue pleas and then moved for summary judgment as a matter of law on the ground that there was no genuine dispute as to material fact and filed therewith the supporting affidavits of three witnesses. The supporting affidavit made by the president of the corporation that had been engaged for about a year in building houses along one side of the right of way and had contracted with an artisan (by whom the plaintiff was employed) to dig dry wells on the back of the lots on which houses were being built stated that the men on the rig had been informed that they were working near "hot stuff" and to stay clear of the power lines. The other two supporting affidavits made by qualified and experi-

---

1. The co-worker died as a result of the accident.

enced inspectors in the employment of the power company were to the effect that they were familiar with the provisions of the safety code of the electrical industries and had found that the construction and clearances of the facilities exceeded the minimum requirements of the code; and one of the inspectors added that when he visited the scene of the accident the following day he found that the well-digging rig was standing under the transmission lines, that the bare copper conductor suspended between the poles was more than twenty-three feet above grade and that the twenty-eight foot boom on the rig had electrical burn marks about two feet below the top.

In an opposing affidavit, the driver of the truck on which the digging rig was mounted, besides saying that he was unaware the overhead wires (estimated by him to be approximately eighteen feet high) carried electricity, that he thought they were telephone wires and that he had not been warned (either personally or otherwise) that the wires were dangerous, also stated that he had driven the truck under the wires and then backed to a position where the hood was below the wires and the back was near the rig located "between the house and the wires." He added that although he did not actually see the boom touch the wires as it was being raised, he heard a noise and saw a light run down the boom, but he did not say why he parked where he did or why the workmen were operating the rig on the narrow right of way in close proximity to the wires overhead. The two opposing affidavits made by the seventeen year old plaintiff having an eighth grade education were to the effect that he was not aware the wires he saw were carrying electricity and denied he had been informed that they were dangerous. Although he would have seen had he looked that the longer boom when raised could possibly become snarled with the wires, he apparently took no precautions for his safety and instead undertook to operate, or assist in the operation of, the rig despite the obviously dangerous situation he was chargeable with seeing. A copy of the one hundred and ten foot right of way agreement was attached to the supplemental affidavit of the plaintiff. By its terms, the grantors granted to the power company the right to construct and maintain a pole line with its fixtures and appurtenances for the transmission and distribu-

tion of electricity and the right to keep the easement clear of trees, buildings and obstructions, but the grantors reserved unto themselves such rights (for agricultural and other purposes) as were not inconsistent with the use of the right of way by the grantee.

The lower court, in ruling that the defendant was not required to anticipate the occurrence of the accident and that the plaintiff failed to take reasonable care to discover and avoid suggestive and obvious danger, entered a summary judgment in favor of the defendant. Usually it is neither advisable nor practicable to enter a summary judgment in a tort action, but there was no reason why it should not have been done in this instance.

On appeal, the injured workman, claiming the power company had constructive notice that houses were being built in the area and should have foreseen that someone might be injured in an accident such as he had, contends that there were material questions of fact which should have been submitted to the jury. On the contrary, the power company contends that there was no basis for a finding that it could have been primarily negligent.

We think that summary judgment was properly granted. In this case where the supporting affidavits, on the one hand, are to the effect that the injured workman was warned that the overhead wires carried electricity and that the construction and maintenance of the power line was well within the recognized safety standards; and the opposing affidavits, on the other hand, stated that no warning had been given or posted and that the workman was not aware of the dangerous nature of the wires, the circumstance seems to present a question of fact rather than a matter of law, but that is not the real situation. For, in considering the facts and proper inferences drawable therefrom in the light most favorable to the appellant, as we are obliged to do, it is clear that in this case there was no material issue of fact as to whether or not the appellant had notice or was aware of the dangerous situation he chose to ignore. Maryland Rule 610 d 1. And by the same token, it is likewise apparent that the appellant, having raised or participated in the raising of the boom high enough to touch the overhead wires, was contributorily negligent as a matter of law.

The case of *Levonas v. Acme Paper Board Co.*, 184 Md. 16, 40 A. 2d 43 (1944), is in point here both as to the absence of a material issue of fact and as to the presence of contributory negligence. Even the facts are analogous. In that case, where the plaintiff was injured when the cable on a crane he was operating struck the overhead wires of an electric company as he was lifting steel beams to a building being erected on the premises of the defendant, it was held that the accident was caused by the negligence of the operator in bringing the steel cable too close to the high tension wires. In discussing the claim that the electric company was negligent, it was said at the top of p. 21:

> "[T]he law does not require that a person, who maintains even so deadly an instrumentality as a high voltage electric wire, shall anticipate at his peril every possible fortuitous circumstance under which some person might make a contact with the wire, resulting in injury or death. * * * Electricity is now used so universally in city and country, in home and in business, for illumination and motive power, and for communication and transportation, that it is a matter of common knowledge that any line carrying electric current is dangerous to a more or less degree. The fact that a wire is charged with electric current is notice of danger, and any person mindful of his safety should treat it with caution. When a person voluntarily touches, or approaches nearer than a reasonably prudent person would, an electric wire, which he knows, or which a person of ordinary knowledge and experience would have reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence thereof he is injured, it will be assumed as a matter of law that his own negligence contributed to the accident."

With regard to the question of primary negligence, it was said at the bottom of p. 21:

> "The law does not require an electric company to insulate its high-tension wires everywhere, but only where there is reason to apprehend that persons may

come in contact with them, either in the pursuit of their calling or where they may be reasonably expected to go. In the absence of statute or ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in close proximity to them."

Finally, with respect to what constitutes contributory negligence on the part of one acting as an ordinarily prudent person, it was said at p. 22:

"While knowledge of danger is an important factor in determining the question of contributory negligence, a man of ordinary sense and prudence is chargeable with knowledge of danger when he has knowledge of the facts and they are such as are ordinarily sufficient to impress such a man that danger exists."

In most cases, the mere fact that a person is aware of the presence of wires is sufficient to charge him with knowledge that they may be dangerous. See, for example, *M. & C. C. of Cumberland v. Lottig,* 95 Md. 42, 51 Atl. 841 (1902); *State use of Bell v. Eastern Shore G. & E. Co.,* 155 Md. 660, 142 Atl. 503 (1928); *State use of Bahner v. Consolidated G. E. L. & P. Co.,* 159 Md. 138, 150 Atl. 452 (1930); *Arkansas P. & L. Co. v. Lum,* 262 S. W. 2d 920 (Ark. 1954); *Croxton v. Duke Power Co.,* 181 F. 2d 306 (4th Cir. 1950); *Burns v. Carolina P. & L. Co.,* 193 F. 2d 525 (4th Cir. 1951); *Manaia v. Potomac E. P. Co.,* 268 F. 2d 793 (4th Cir. 1959); *Thompson v. Consolidated G. E. L. & P. Co.,* 111 F. Supp. 719 (D. Md. 1953); *Rudd v. P. S. Co. of Okl.,* 126 F. Supp. 722 (N. D. Okl. 1954). And see the cases, involving contact of cranes, derricks or other movable machines with electric wires, cited in §§ 6, 8(b) and 15 in 69 A.L.R.2d 93. Also see 26 Am. Jur. 2d *Electricity, Gas and Steam* §§ 160-169; 29 C.J.S. *Electricity* §§ 44, 52, 53.

In *So. Md. Elec. Coop. v. Blanchard,* 239 Md. 481, 212 A. 2d 301 (1965), a majority of this Court, in holding that the plaintiff should have seen them, went so far as to charge him with knowledge of the danger of overhead wires he denied hav-

ing seen. We need not go that far here because the plaintiff did not deny seeing wires overhead. Still, regardless of his age and limited schooling, the plaintiff, having seen the wires and failed to heed the fact that they were inherently dangerous, was guilty of contributory negligence as a matter of law. Moreover, since the plaintiff was a trespasser or at most a licensee, the defendant owed him no duty except that of not wilfully or wantonly injuring him. *Levine v. Miller*, 218 Md. 74, 145 A. 2d 418 (1958).

The appellant relies on *Brown v. Edison Electric Illuminating Co.*, 90 Md. 400, 45 Atl. 182 (1900), to support the contention that his case should have been submitted to the jury, but that case is clearly distinguishable in that it, unlike the instant case, involved a defectively insulated high voltage electric wire which due to its location required insulation.

For the several reasons herein stated, the entry of judgment in favor of the defendant-appellee against the plaintiff-appellant will be affirmed with costs.

*Judgment affirmed; appellant to pay the costs.*