FRAZEE ET AL. *v.* BALTIMORE GAS AND
ELECTRIC COMPANY

[No. 44, September Term, 1969.]

*Decided November 13, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*John J. Pyne,* with whom was *Irving Turner* on the brief, for appellant.

*Daniel Eidman, III,* with whom were *Robert A. Amos, Paul W. Davis, James A. Biddison, Jr.* and *Edward T. Conroy* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The question presented to us on this appeal is whether or not Joseph Lowell Frazee, the deceased husband of the appellant Ronnie Lynn Frazee, was guilty of contributory negligence as a matter of law upon the affidavits, exhibits and answers to interrogatories filed in connection with a motion for summary judgment granted by the Circuit Court for Prince George's County (Powers, J.).

Mrs. Frazee, in her own right, as administratrix of her deceased husband and as mother and next friend of the two minor children of the deceased, filed an action in the lower court, for the wrongful death of the decedent by electrocution, against Baltimore Gas and Electric Company (Baltimore Gas & Electric) and two others, Kaslow and Poretsky. After a demurrer to the declaration had been overruled, the defendants moved for summary judgment with accompanying affidavits, exhibits and legal memoranda. The plaintiffs filed counter-affidavits, exhibits and legal memoranda. After oral argument the lower court, as we have indicated, filed an opinion and entered an order on February 18, 1969, granting the motions for summary judgment of all three defendants, principally on the ground that from the material facts appearing from the affidavits and exhibits, the decedent was guilty of contributory negligence as a matter of law. From the judgment for the defendants for costs entered the same day as the order, the plaintiffs

took a timely appeal *only* from the judgment in favor of Baltimore Gas & Electric. No appeal was taken from the judgment in favor of Kaslow and Poretsky.

The fatal accident occurred on the morning of December 2, 1964, when the decedent, a thirty-one-year-old painter, was electrocuted during the course of painting a three-story garden type apartment house in Landover, Prince George's County. There were no eyewitnesses to the electrocution. Several other painters working on the job, however, were nearby and found the decedent unconscious but still alive on the ground between 10 to 15 feet from the base of the north side of the building in question and approximately 20 feet west of the east side of the building, below and opposite to the end of a metal roof gutter which ran approximately 20 feet westward along the roof of the north wall from the east end of the building. When last seen prior to the accident, the decedent had been painting this gutter; the gutter was completely painted when the other painters found the decedent on the ground. The decedent died on the way to the hospital, without regaining consciousness.

An aluminum extension ladder which had been extended for approximately 30 feet was lying on the ground almost parallel to the north side of the building. The base of the ladder was near the decedent and its top was toward the west end of the building. The ladder had rubber guards on hinged feet at its base. There were two electrical burn marks on the outside of the rails of the ladder approximately two feet from its top.

The north wall of the building was 54 feet long. Its height varied from about 26.5 feet along the 20 foot roof gutter to about 31.8 feet where the roof peaked midway between the end of the front roof gutter and the northwest corner of the building. There was a two foot overhang of the roof which ran the length of the wall. The metal roof gutter ran 20 feet west from the east end along the roof. This gutter was approximately six inches wide.

The electrical power lines of the appellee, Baltimore Gas & Electric, were suspended from "T" shaped wooden utility poles about 117 feet apart, one located west of the west wall line and the other east of the east wall line. The lines consisted of three uninsulated metal wires, each carrying 13,200 volts of electricity. They were attached to the crossbars of each pole. The height of the wires above the ground as they passed the north wall of the building was approximately 28 feet. The distance from the north wall of the building to a point directly below the nearest wire was 14.7 feet at the west end of the wall, 13.5 feet where the metal roof gutter ended, and 12.9 feet at the east end of the wall. As we have observed, there was an overhang of the roof of two feet and for part of the distance on this overhang, there was a metal roof gutter some six inches wide. The nearest wire was, therefore, 10.7 feet from the nearest point on the gutter at the east end of the wall and 11.1 feet from the gutter where it ended 20 feet west of the east end of the wall. There was a neutral ground wire running between the poles approximately 22 feet above ground and about six feet below the middle wire of the three upper wires. There was a distance of 63 feet between the north wall of the building in question and the south wall of the next adjacent apartment building to the north.

The facts already given are not in dispute and appear from the affidavits, plats, photographs and answers to interrogatories filed in the case, both in support and in opposition to the motions for summary judgment.

The photographs filed by the plaintiffs show that the electric wires were plainly visible and were in the location with reference to the wall of the building in question as already described.

In reply to the eighteenth interrogatory submitted by Baltimore Gas & Electric to the plaintiffs, *i.e.*, "If the plaintiffs contend that the defendant's wires were in any way obscured from the view of the Decedent at the time and place of the occurrence, upon what facts do they rely?", the plaintiffs answered as follows:

"18. Plaintiffs make no contention that defendant power company's wires were obscured, except to the extent that decedent was wearing a hooded sweater and the hood *may* well have obscured his peripheral vision and made him unaware of the presence of the wires." (Emphasis supplied.)

In the affidavit of Winfield S. Curtin, an employee of Charles R. Zepp & Co., Inc., the painting contractor doing the painting work at the Columbia Park Apartments, it was stated that Mr. Curtin knew the decedent, his foreman, about two months prior to the fatal accident. He stated:

"I knew him as a real guy who wouldn't ask any of us to do anything he wouldn't do. He would always tell us to be very careful of the high voltage wires. He pointed out to us the wires around the Columbia Park Apartments, and, of course, we all knew about the high voltage wires, including the line which came up between 2510 and 2526 Marlboro Avenue of the Apartments where the accident happened."

In the first affidavit of Frank R. Innocenti, also a painter for Zepp, dated July 22, 1968, and filed by Baltimore Gas & Electric, the affiant stated that he knew the decedent who lived in the same apartment house in which the affiant lived. He then stated:

"Joe Frazee formerly worked for Potomac Electric Light and Power Company in the repair crew, and he knew the danger of high voltage wires.

"He was the foreman on a job I worked on at Columbia Park Apartments. He would warn us from time to time about the high voltage wires and tell us not to get close to them."

In Mr. Innocenti's second affidavit dated October 30, 1968, and filed by the plaintiffs, the affiant stated:

"* * * although I recall Joe Frazee warning us frequently about the electrical wires in and about the project, I do not recall him specifically pointing out the particular wires running past the place where he was injured; that I was never told that the wires were uninsulated and, as a matter of fact, I thought all of the wires in the area were coated or insulated."

There were conflicting affidavits containing expert opinions in regard to whether or not Baltimore Gas & Electric had complied with certain provisions of the National Electrical Safety Code.

Guy Zepp in his affidavit of November 20, 1968, filed by the plaintiffs, described the custom of painters to carry ladders upright inasmuch as painters normally do not use ropes on their extension ladders. This is mainly because the ropes easily get tangled in the way of the painters' feet and can be a hazard. He described three methods used to carry the ladder upright from one painting location to another. He further stated that the ladder the decedent used had no rope and that he was shown two small pinpoint electrical burn marks, one on each ladder rail, about two feet from the top of the ladder.

In our opinion there was no dispute in regard to the *material* facts necessary for a decision of the case and Baltimore Gas & Electric was entitled to a summary judgment because the decedent was guilty of contributory negligence as a matter of law. The lower court was, therefore, correct in granting Baltimore Gas & Electric's motion for summary judgment under Maryland Rule 610 and we shall affirm the judgment for costs in favor of Baltimore Gas & Electric.

The present case is, in our opinion, controlled by our decisions in *Driver v. Potomac Electric Power Co.*, 247 Md. 75, 230 A. 2d 321 (1967), and *Southern Maryland Electric Cooperative, Inc. v. Blanchard*, 239 Md. 481, 212 A. 2d 301 (1965).

It is undisputed that the decedent was the foreman of

the painting crew on the job and that he had warned the other painters about the electric wires in and around the project. The plats and photographs show that the electric wires were in plain view. The affidavits also establish that the deceased was formerly employed by the Potomac Electric Light and Power Company, although there is a dispute in the affidavits in regard to in what capacity he served that company. Under these undisputed facts, and assuming for the argument only, without deciding, that there was primary negligence on the part of Baltimore Gas & Electric, the cases mentioned charge the decedent with knowledge of the presence of the overhead electric wires, the dangerous nature of those wires, and the danger to life and limb of placing a metal object which will conduct electricity against those electrical wires. To permit an aluminum ladder, a known conductor of electricity, to touch the electrical wires under the circumstances mentioned, is contributory negligence as a matter of law.

In *Driver*, a 17-year-old lad having only an eighth grade education, who swore in his affidavit that he was not aware that the wires he saw were carrying electricity and denied that he had been informed that the wires were dangerous, was held to be guilty of contributory negligence upon the defendant electrical power company's *motion for summary judgment* when a well digging rig operated by the plaintiff and another employee was driven against the overhead electric wires. This Court in *Driver* relied upon and followed the prior decisions of this Court in *Blanchard, supra,* and in *Le-Vonas v. Acme Paper Board Co.,* 184 Md. 16, 40 A. 2d 43 (1944).

In *Blanchard,* the plaintiff *denied* that he had seen the overhead electrical wires into which he raised a television antenna, but the Court held that the plaintiff's conduct was contributory negligence as a matter of law and that the trial court should have directed the jury to find a verdict for the defendant power company for this reason. In our opinion, the present case is not as strong a

case for the plaintiffs as was the case for the plaintiff in *Blanchard* and the decision in *Blanchard*, as well as the decision in *Driver*, is dispositive of the instant case. Indeed, in *Blanchard*, Chief Judge Prescott, for the Court, after a review of prior Maryland cases, stated:

> "From these last two cases, alone, it would seem necessarily to follow that if the fortunate young plaintiff here had been so unfortunate as to have been electrocuted, his use-plaintiffs would have been barred from recovery, as a matter of law, on the ground of contributory negligence of the deceased."
> (239 Md. 481, 488, 212 A. 2d 301, 305-306)

The plaintiffs, as appellants, earnestly contend that the affidavits, plats, and photographs with reasonable inferences from them taken most favorably to the plaintiffs, place certain facts in dispute and under Maryland Rule 610 d, as well as the many Maryland cases construing the rule, a summary judgment should not be granted in that there was a genuine dispute as to material facts. Unquestionably there are many facts in dispute in the present case, but, in our opinion, there is no genuine dispute in regard to the *material facts* necessary for disposition of the instant case. We have already set out those material facts and need not repeat them here. The disputes of fact in regard to the location of the paint bucket used by the decedent, whether or not the decedent pointed out the particular wires to the other painters, in what capacity the decedent served his former employer, Potomac Electric Light and Power Company, or whether or not Baltimore Gas & Electric violated the National Electrical Safety Code, in the light of our assumption, for the purpose of the argument of the existence of primary negligence and of the decisions of this Court in the prior cases mentioned, are not material facts.

*Judgment affirmed, the appellants to pay the costs.*