495 A.2d 838

**Robert D. LISCOMBE**

v.

**The POTOMAC EDISON COMPANY et al.**

**No. 148, Sept. Term, 1984.**

Court of Appeals of Maryland.

July 23, 1985.

Hans S. Goerl and Scott L. Schubel, Hagerstown (Wachs, Boone, Goerl & Bannon, P.A., Hagerstown, on brief), for appellant.

John H. Bolgiano, Baltimore (Smith, Somerville & Case, Baltimore, on brief), for appellee, The Potomac Edison Co.

William J. Foote, Jr., Rockville (Francis J. Ford and Ford & O'Neill, Rockville, on brief), for appellee, The Hagerstown Block Co.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

W. ALBERT MENCHINE, Judge, Retired Specially Assigned.

Robert D. Liscombe (Liscombe) filed suit in the Circuit Court for Washington County against Potomac Edison Company (Potomac) and Hagerstown Block Company (Hagerstown) for compensatory and punitive damages for electric

shock injuries allegedly caused by the gross negligence of the defendants. In due course separate motions for summary judgment were filed by Potomac and by Hagerstown on the ground that there was no genuine dispute as to any material fact and that each was entitled to judgment because Liscombe was guilty of contributory negligence as a matter of law.

The trial court granted the motions of Potomac and Hagerstown, declaring in the course of a memorandum opinion: "We find as a matter of law that Plaintiff is guilty of contributory negligence." Liscombe appealed to the Court of Special Appeals. We granted certiorari before consideration by that Court.

Liscombe makes three contentions on appeal, namely:

1. The circumstances are such that the issue of contributory negligence properly is a matter for determination by the trier of facts,

2. Alternatively, that contributory negligence is not a defense where the tort, as here contended, is based upon alleged wanton or reckless conduct, and

3. Alternatively, that Potomac and Hagerstown are liable under the doctrine of last clear chance.

### 1. Contributory negligence as a matter of law

Maryland Rule 2–501 authorizes the trial court to grant summary judgment when there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. In the subject case the trial judge found that there was no genuine dispute as to any material fact and entered summary judgment against Liscombe. On review we are concerned with whether there was a dispute as to any material fact and if not, whether the moving party was entitled to judgment as a matter of law. In considering the duly shown facts, all reasonable inferences deducible therefrom must be considered in a light most favorable to the party opposing the motion and against the party making the motion. *Wash-*

*ington Homes v. Inter. Land Dev.*, 281 Md. 712, 717–18, 382 A.2d 555, 557–8 (1978) and cases there cited.

The undisputed facts are these:

Potomac installed, operates and maintains high voltage lines that pass over the rear lot line of premises occupied by Hagerstown. The land occupied by Hagerstown has been utilized in the conduct of a ready mix concrete plant since 1975. The land contains buildings and equipment for the mixing of various components used in the industry.

Storage facilities on the land consisted of bins for the storage of those components and an area in the rear of the land for the dumping of such materials when the bins were full. This dumping area included a section that lay under the high voltage lines.

Materials were brought to the scene by trucks of two types: (1) ordinary dump trucks with body affixed to the truck itself, and (2) tractor-trailer dump trucks. The overhead lines formed no threat to the ordinary dump truck when its body was elevated to deposit materials on the stock pile. Tractor-trailer dump trucks, however, when elevated to unload the materials contained in the trailer, reached a height where contact between its body and wires could occur.

The precise height of the wires from the ground does not appear from the record.

When elevated, the bed would reach the high voltage line. That line consisted of an uncharged lower ground wire with three charged lines above it. At the time of Liscombe's injury flags had been placed on the lines to provide greater visibility to the lines by persons at ground level.

Liscombe had made deliveries to the Hagerstown site on 15 to 20 previous occasions. He acknowledged that he was aware of the existence of the power line at the point where the material was being dumped and would not deny that Hagerstown employees had on several occasions warned him "about the danger of the overhead wires."

On November 25, 1981, Liscombe delivered a load of sand to the Hagerstown premises. Observing that the storage bins were full he proceeded to the material storage area. At that time the stock pile was somewhat depleted with the result that the loading edge of the materials pile lay directly under the wires.

The deposition of Liscombe shows that he backed the tractor-trailer into the pile. He got out of the tractor, stood facing its front and put the lever [1] in motion that let the bed up, watching as it did so. He reached to stop the bed from going up so he could pull forward and continue raising it. He woke up in the hospital. He did not hold onto the lever during the ascent of the bed because "all [he] had to do was reach over and tap it and it would have went neutral or went all the way forward and dropped down." He did not know how close the bed got to the electric line when he decided he had better stop its ascent, acknowledging that he "knew it was getting up there and [he] had to stop it." He did not have his hand on the lever when he made the decision to stop the ascent of the bed because it was just within an arms length. He denied that he waited too long before stopping the ascending bed declaring that "when [he is] raising a bed, [he was] right there. And the slightest little thing doesn't look right, she comes down." At the time he went to stop the bed from ascending he did not know how far the bed was from the wire saying that "[He] don't even remember seeing the wires," adding that "stuff on that day is very blurry." He testified that he was told "there was no way that [he] could have seen whether the bed was in the wires because the sun was right there. The sun was hitting the wires, shining down to the wires through to the bed." He knew the wires were there. He was trying to keep the bed from getting too close to the wires and guessed that he "just didn't stop it in time." He did not know whether the bed touched the wire. He assumed that it would be dangerous to hit the wires with the

---

1. The lever was affixed to the frame between the tractor and trailer.

truck. In the course of his deposition he gave this further account of the events immediately preceding his injury:

"Q. And when you backed your truck to dump it onto the stockpile, did you raise the bed of the dump truck up so that it came in contact with the wire?

A. I raised the bed up, but I wasn't—I mean I didn't realize that the bed had come in contact with the wires.

\* \* \* \* \* \*

Q. And you would agree that, because you got your shock, your dump truck hit the wire.

A. I don't know. I heard a couple of stories on that, so I don't know.

Q. What stories?

A. I heard that—like I say, I don't know that much about electricity, so I am just going by what I heard. I heard that the bed was possibly was drawn to the wires. Now, I don't know whether there is any truth to this or not. I don't know.

\* \* \* \* \* \*

Q. That's really the only rumor.

A. Yes, sir.

Q. Or story you heard. Well, let me put it this way: whether the electric wire drew the bed into the wire or the bed was raised to the wire, somehow or another the bed and wire came together; is that right?

A. As far as I know."

### Disputed Facts

Liscombe contends that disputed facts in three areas compel determination by the trier of facts of the question whether he was guilty of contributory negligence, namely: (a) whether he had knowledge of a similar incident prior to the date of his injury, (b) whether the electrical charge entering his body through the trailer body was the result of actual contact with the wires or was produced by an arcing effect without such contact, and (c) whether the glare of

sun light affected Liscombe's vision concerning the position of the rising body of the trailer viz-a-viz the charged wires.

a.

### Prior knowledge of similar incident

In the course of his deposition, Liscombe gave the following testimony:

"Q.  Well, you know that one of the men there, one of the truck drivers there had gotten a shock some weeks before you did.

A.  I learned of that after my accident."

In a deposition, William Luther, the victim of the earlier episode testified that he spoke to Liscombe immediately before the latter's injury and thus described the conversation:

"Q.  I want you to tell me to the best of your recollection, everything you said to him and everything he said to you at that time.

A.  I remember saying, 'Don't fry your ass.'  If you want to know what I say exactly, cause I had just done it, I said: 'Dump out far enough so you don't get into the wires,' He said: 'Don't worry about me.' "

Liscombe filed a subsequent affidavit in which he stated:

"I have no recollection of William R. Luther, Jr. (Chipmunk) telling me on the day of my accident 'Don't fry your ass.'  I have no recollection of Mr. Luther making any comments to me at all about the wires and their danger, and I am almost certain that he did not.  I did not know at any time before my accident that Mr. Luther had had an electrical accident at the same location."

b.

### Arcing of the electrical charge

Doyle Sowers, an employee of Hagerstown testified that the trailer bed had gone through the bottom (ground) wire and was touching the top wires.  The testimony of Liscombe in his deposition does no more than establish that he

did not know whether contact with the wires occurred. He did, however, testify that he heard, from an undisclosed source, "that the wires might have drawn the bed into the wires" but acknowledged that he "[did not] know if there is any truth to that or not."

c.

### *Sun glare impairment of vision*

In the course of Liscombe's deposition he had testified that after the electric accident he had been told that "there was no way I could have seen whether the bed was in the wires because the sun was right there. The sun was hitting the wires, shining down to the wires through to the bed." There was other evidence that it had been raining at the time of his injury.

Before we consider the question whether the undisputed facts in this record show that Liscombe was contributorily negligent as a matter of law we must first determine whether the *disputed facts* are *material facts* bearing upon the issue of contributory negligence that ameliorate the damaging effects of the undisputed facts. We think they are not. We explain.

As to a:

Whether Liscombe knew or did not know of the prior injury of Luther is not material to the issue of contributory negligence. He knew of the presence of the charged wires and the danger inherent to contact with or proximity to them.

As to b:

Similarly, whether the bed of the trailer contacted the wires directly or was drawn to the wires by the electric current is not a *material fact* bearing upon the issue. Liscombe himself was the sole controller of the movement of the ascending trailer body and solely assumed the obligation to avoid proximity to the wires.

As to c:

The suggestion that the sun's glare may have created an impediment to his vision in no way lessens the impact of the undisputed facts. If such a condition existed, his actual knowledge of the presence of the wires and of the general danger inherent thereto required him to exercise reasonable care and caution increased to a degree commensurate with the greater danger. *Longenecker v. Zanghi*, 175 Md. 307, 313, 2 A.2d 20, 23 (1938).

We find, accordingly, that the *disputed facts* are not *material facts* that in any way diminish the legal effect of the undisputed facts upon the issue of contributory negligence and thus do not prevent the entry of summary judgment. *Lynx, Inc. v. Ordnance Products*, 273 Md. 1, 8, 327 A.2d 502, 509 (1974).

We pass then to the question whether the undisputed facts establish that Liscombe was contributorily negligent as a matter of law.

As previously stated, both Potomac and Hagerstown in their separate motions for summary judgment rely exclusively upon the contributory negligence of Liscombe as a bar to his recovery. Accordingly, we assume for the purpose of this decision that the evidence establishes that both defendants were guilty of ordinary negligence.

This Court has on a number of occasions had cause to consider the issue of contributory negligence as a matter of law in electric shock cases. In *State v. Potomac Edison Co.*, 166 Md. 138, 147, 170 A. 568, 571 (1934) the late Judge Offutt for this Court succinctly stated the determinative factor in the resolution of that issue:

"If [the injured person] knew or should have known that the wire was dangerous, it follows as of course that he was negligent in touching it, or in coming near enough to it to receive the shock. If he neither knew nor was as a matter of law bound to know that, then whether he was negligent was a jury question."

In *Potomac Edison Co. v. State,* 168 Md. 156, 161, 177 A. 163, 166 (1935), in a second appeal of the case cited immediately *supra,* Judge Offutt, again speaking for this Court thus amplified his prior comment: "So that, where such a person voluntarily comes in contact with, or approaches nearer than a reasonably prudent person would, a wire or other thing which he knew, or, as a person of ordinary knowledge and experience, has reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence of such contact or proximity is shocked and injured, it will be assumed as a matter of law that his own negligence contributed to the accident."

In *State v. Potomac Edison Co.,* 166 Md. at 147, 170 A. at 571, and *Potomac Edison Co. v. State,* 168 Md. at 171, 177 A. 163, the issue of contributory negligence was held to be properly left for determination by the trier of facts because the evidence permitted a reasonable conclusion that the decedent neither knew nor should have known that the wire was dangerous.

In *LeVonas v. Acme Paper Board Co.,* 184 Md. 16, 19, 40 A.2d 43, 44–45 (1944) the operators of a crane "had just placed a 10-foot beam in the hooks of the steel cable hanging from the boom, with intention of putting that beam also on the truck, when Le Vonas told Fado to hold the beam from moving until he found where it belonged. LeVonas then stopped over a blueprint for about five minutes to find out the number of the beam which would locate its proper position in the roof. While the cable was hanging motionless within four feet of the main line of electric wires maintained by the Consolidated Gas, Electric Light & Power Company along the side of the road, Fado suddenly saw a blue flame jumping along the beam, and instantaneously he was knocked to the ground and burned by electricity. As he fell, the beam started to move. LeVonas, seeing the beam drifting toward him, raised his hand to hold it, whereupon he too was shocked."

After so capsulating the facts as above, we thus declared the rule of law to be applied in determining whether contributory negligence exists as a matter of law:

"When a person voluntarily touches, or approaches nearer than a reasonably prudent person would, an electric wire, which he knows, or which a person of ordinary knowledge and experience would have reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence thereof he is injured, it will be assumed as a matter of law that his own negligence contributed to the accident." *Id.* at 21, 40 A.2d at 45–46.

We then affirmed the judgments entered upon directed verdicts in favor of the defendants, observing that "In this case plaintiffs' injuries were caused by their own negligence in bringing the steel cable too near the high-tension wires to avoid the accident." *Id.* at 23, 40 A.2d 46–47.

*See also Driver v. Potomac Electric,* 247 Md. 75, 79, 230 A.2d 321, 324 (1967), where it was "apparent that the appellant, having raised or participated in the raising of the boom high enough to touch the overhead wires, was contributorily negligent as a matter of law." We affirmed summary judgment in favor of the defendant. To the same effect is *So. Md. Electric v. Blanchard,* 239 Md. 481, 212 A.2d 301 (1965), wherein we reversed without a new trial a judgment in favor of a plaintiff who, in attempting to install a TV antenna caused it to come in contact with charged wires, holding that he was guilty of contributory negligence as a matter of law.

In *Frazee v. Balto. Gas & Elec. Co.,* 255 Md. 627, 633, 258 A.2d 425, 428 (1969), affirming summary judgments in favor of the defendants, we reexamined and approved our prior decisions in *Blanchard* and *Driver,* both *supra,* noting that in *Driver* "This Court * * * relied upon and followed the prior decisions of this Court in *Blanchard, supra,* and in *LeVonas v. Acme Paper Board Co.,* 184 Md. 16, 40 A.2d 43 (1944)."

In *Stancill v. Potomac Elec. Power Co.*, 744 F.2d 861 (D.C.Cir.1984) the Court considered a diversity action for damages arising out of an electrical accident in Maryland that caused the death of one and injury of another. An aluminum ladder they were handling came into contact with a high voltage line. The District Court had held that they assumed the risk by failing to comply with Maryland's High Voltage Line Act (Maryland Code Article 89, Sections 58–63) and thus foreclosed recovery. The Circuit Court of Appeals affirmed, likewise on the basis of assumption of risk but assigned a somewhat different reason.[2] The injured and the deceased were workmen engaged to install gutters and downspouts at a home in Takoma Park, Maryland. The two men, maneuvering a 40 foot aluminum ladder under a power line, caused it to touch or come within arcing distance of it. Gross negligence on the Electric Power Company's part was charged.

█ In the course of the *per curiam* opinion in *Stancill* the Court said:

The Maryland courts have identified three elements to be established before a risk will be deemed legally assumed. The defendant must show that the plaintiff (1) had knowledge of the risk of danger, (2) appreciated that risk and (3) voluntarily exposed himself to it. *Id.* at 866.

We agree. *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967).

From that premise the Court in *Stancill,* declared:

It follows that Stancill and Kefauver voluntarily assumed the risk within the meaning of the applicable Maryland law. 'When a person undertakes work which exposes him to obvious dangers which he knew or had the

---

2. In footnote 37 of *Stancill* the Circuit Court of Appeals said:

The District Court held that Stancill and Kefauver, by ignoring the state's High Voltage Line Act, assumed the risk as a matter of law. *Stancill v. Potomac Elec. Power Co., supra* note 13, at 1 A.App. 186. Since we conclude that their behavior considered in its entirety constituted an assumption of the risk, we do not reach the question on which the District Court's decision pivoted.

opportunity to know, he must' under the law of that state . 'be considered as having assumed such risks, and he cannot recover for any injuries resulting therefrom.' The case before us presents exactly that situation, though certainly it need not have. 744 F.2d at 867 (quoting *Le Vonas v. Acme Paper Co.*, 184 Md. at 23, 40 A.2d at 46). In conclusion, the Court said:

Simply by complying with procedure specified in Maryland's High Voltage Line Act,[3] the risk presented by the distribution line could have been completely eliminated. In declining to pursue that alternative, Stancill and Kefauver, in the words of the Maryland Court, 'preferred convenience to safety and knowingly took the chance.' The District Court did not err when it held that appellants' action was barred by the Maryland doctrine of

---

**3.** The Act (Art. 89, Section 58–63) contains the following language in Sections 60 and 61:

§ 60. **Activities prohibited near high-voltage lines without safeguards.**

The operation, erection, handling, storage, or transportation of any tools, machinery, equipment, supplies, materials, or apparatus, including but not limited to antennas, antenna supports, flagpoles, and other similar facilities, the moving of any house or other building or structure, or any part thereof, and the performing of tree trimming or activities of like nature, under, over, by or near high-voltage lines is hereby expressly prohibited, if at any time during the course thereof any part of any person or object will come or be brought within ten feet of any high-voltage lines, unless such high-voltage lines have first been effectively guarded against dangerous accidental contact, and appropriate protective arrangements shall have first been made with the owner or operator of such high-voltage lines, x x

§ 61. **Activities within ten feet of high-voltage lines; duty of owners, etc., of cranes, etc.**

(a) When any such operation, erection, handling, storage, transportation, or moving is to be performed within ten feet of any high-voltage lines, *the person or persons responsible for performing the same shall promptly notify the owner or operator of the high-voltage lines of the work to be performed* and such person or persons shall be responsible for the provision, subject to any necessary agreement of the owner or operator of the high-voltage lines, of one or more of the safety measures required by § 60 of this article before proceeding with any work within said ten feet. (Emphasis added).

assumption of risk. 744 F.2d at 867 (quoting *Evans v. Johns Hopkins Univ.*, 224 Md. 234, 239, 167 A.2d 591, 594 (1961)).

In *Warner v. Markoe*, 171 Md. 351, 359–60, 189 A. 260, 264 (1937), the late Chief Judge Carroll T. Bond, speaking for this Court, said:

> "The distinction between contributory negligence and voluntary assumption of risk is often difficult to draw in concrete cases, and under the law of this state usually without importance, but it may be well to keep it in mind. Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs."

This Court historically has treated the conduct of persons involved in electrical accidents as falling within the negligence (causative) concept rather than within the assumption of risk (volitional) concept. It is true that in *LeVonas, supra,* the language previously quoted in *Stancill, supra,* was used in passing comment but our holding was: "In this case plaintiffs' injuries were caused by their own negligence in bringing the steel cable too near the high tension wires to avoid the accident." 184 Md. at 23, 40 A.2d at 46–47.

Similarly, in *Blanchard, Driver* and *Frazee,* all *supra,* the basis for decision was that it was the contributory negligence of the plaintiffs as a matter of law that prevented the recoveries. Thus in *Blanchard* we said: "It is clear to us that the facts of this case not only justify a ruling that appellee was negligent as a matter of law, but impel it." 239 Md. at 490, 212 A.2d 301. In *Driver,* we said: "Still, regardless of his age and limited schooling, the plaintiff,

having seen the wires and failed to heed the fact that they were inherently dangerous, was guilty of contributory negligence as a matter of law." 247 Md. at 82, 230 A.2d 321. In *Frazee* we said: To permit an aluminum ladder, a known conductor of electricity, to touch the electrical wires under the circumstances mentioned, is contributory negligence as a matter of law. 255 Md. at 633, 258 A.2d at 428.

■ In the subject case also, we choose to rest our decision upon the objective criteria of contributory negligence rather than upon the subjective criteria of assumption of risk. We hold that Liscombe was guilty of contributory negligence as a matter of law.

## 2. Effect of Contributory Negligence

■ Where, as here, the moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with some precision that there is a genuine dispute as to a material fact. *Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 255, 272 A.2d 42, 44 (1971). A mere general statement or bald assertion that Potomac and/or Hagerstown were grossly negligent will not suffice to defeat their motions for summary judgment. *Wyand v. Patterson Agency, Inc.*, 266 Md. 456, 461, 295 A.2d 773, 776 (1972). Otherwise stated, in light of the circumstance that has been shown by Potomac and Hagerstown that Liscombe was contributorily negligent as a matter of law, he must show by legally sufficient evidence that Potomac and/or Hagerstown were grossly negligent before the suggested issue is before us for decision. Appellate courts do not sit to give opinions or abstract propositions. *County Comm'rs. v. Secretary of Health*, 302 Md. 566, 568, 489 A.2d 1127, 1128 (1985) and cases therein cited.

## The Facts

The power lines originally were installed by Potomac to service the needs of the land owner, Martin Marietta Corporation, in the conduct of stone crushing operations at the

site prior to 1975. In that year Martin Marietta leased the property to Hagerstown with the line then furnishing power to its facility. There were no problems incident to the presence of the power lines until the third week in October, 1981 when William R. Luther, Jr., an employee of Hagerstown, received an electric shock when he attempted to prevent the rising body of a trailer from contacting the wires.

At that time Luther observed that the rising body of a tractor trailer dumpster in the charge of one Rodney Sowers "was going to hit the wires and [he ran] over to grab the lever to release the truck x x and sustained an electrical shock."

Potomac, notified of the incident by Hagerstown employees, came to the site within two days, sent an employee who "Took pictures, assessed what they had to do to get it changed, and he went back to whoever he had to go to in the Construction Department, x x x and started proceedings of getting the lines moved." A new route for the lines was staked out but they were not moved prior to Liscombe's injury because of "red tape" problems incident to the obtention of permission from Martin Marietta Corporation "to construct something on their land." Red or orange flags were affixed to the lower, uncharged wire in the interim between the Luther incident and the injury to Liscombe, on November 25, 1981. The injuries inflicted upon Luther were relatively minor, produced no lost time from employment and did not result in a claim for workmen's compensation. Warnings of the potential danger from the wires were given by Hagerstown to all drivers, including Liscombe, who acknowledged that he had observed the warning flags placed upon the wire and was conscious of such potential danger.

In *Bannon v. B. & O. R.R. Co.*, 24 Md. 108, 124 (1866) we said: "Gross negligence is a technical term; it is the omission of that care 'which even inattentive and thoughtless

men never fail to take of their own property,' it is a violation of good faith."

In *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12, 14 (1968) (applying Virginia law) we quoted with approval the definition of gross negligence set forth in 4 Blashfield, Cyclopedia of Automobile Law and Practice, Section 2771 (1946 ed.) as:

> "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrong-doer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."

In *White v. King*, 244 Md. 348, 360–61 & n. 21, 223 A.2d 763, (1966) (applying Michigan law under a guest statute) this Court, after recognizing the principle that gross negligence is disjunctively equated with "wilful and wanton misconduct", found such definition to accord with Maryland law, pointing out that we had considered the definition of gross negligence in a number of cases dealing with manslaughter by automobile.

In *Stancill v. Potomac Elec. Power Co.*, 744 F.2d 861 (D.C.Cir.1984) (applying Maryland law) the Court declared that "[t]he law [of Maryland] recognizes potential liability for harm caused by negligence, whether simple or gross in character" *Id.* at 864 & n. 18 (defining gross negligence as a "wanton or reckless disregard for human life or for the rights of others" [*White v. King*, 244 Md. at 361–362 & n. 2, 223 A.2d at 771 & n. 2, (quoting *Johnson v. State*, 213 Md. 527, 531, 132 A.2d 853, 855, (1957)) ], or "the omission of that care which even inattentive and thoughtless men never fail to take of their own property." [*Bannon v. Baltimore R.R.*, 24 Md. at 124].

In *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 168, 297 A.2d 721, 731–732 (1972) the late Judge Levine for this Court undertook a careful review of the decisions of 23 states upon a question certified by the United States District Court for the Eastern District of Virginia whether punitive damages were allowable in motor vehicle tort cases. After that review Judge Levine answered the question in the affirmative and fashioned the following rule of law to determine whether such punitive damages may be allowed in particular cases:

> We regard a 'wanton or reckless disregard for human life' in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice. It is a standard which, although stopping just short of wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character. Yet, it is both a functional and definitive test which, as we have noted, enjoys the virtue of having been frequently applied in this state. And if, as a test, it has been regarded as adequately stringent to serve as a basis for possible imprisonment, then, surely, there appears to be no valid reason for deeming it too liberal for imposing civil sanctions. We hold that it is the standard by which claims for exemplary damages arising out of motor vehicle operation are to be tested.

In *H & R Block, Inc. v. Testerman*, 275 Md. 36, 338 A.2d 48 (1975) Judge Levine, again speaking for this Court, declined to extend the rule of *Smith v. Gray Concrete Pipe Co., supra*, to negligent breach of contract declaring that "[the rule] is confined to a wanton or reckless disregard for *human life*, and to the operation of a *motor vehicle*. In any event, as we have indicated, where the tort is one arising out of a contractual relationship, actual malice is a prerequisite to the recovery of punitive damages." 275 Md. at 47, 338 A.2d at 54.

In considering whether we reach this issue we shall make two assumptions. First, we shall assume, without deciding, that contributory negligence is not a defense in tort cases in

which gross negligence has been shown. Second, we shall assume, again without deciding, that the lesser standard of *Gray Concrete Pipe Co., supra,* is the appropriate test for determination whether legally sufficient evidence of gross negligence by either defendant has been shown.

■ After examination of the record in the subject case on the basis of those assumptions we are persuaded that gross negligence has not been shown. In *Gray Concrete Pipe Co., supra,* we noted that that "the conduct alleged here reflects a premeditated decision, deliberately arrived at, by an indifferent employer in possession of facts which should have indicated almost certain harm to others". 267 Md. at 172, 297 A.2d at 734. In the subject case, however, the undisputed material facts show that Potomac and Hagerstown acted reasonably and with reasonable dispatch to guard against further harm to others following the injury sustained by Luther. Proposed relocation of the power line was promptly planned and warning flags were affixed to the wires in additional warning of the already apparent danger that was known to Liscombe. Here there was no showing of indifference to the safety of others by either Potomac or Hagerstown—no indication to either that almost certain harm to others would result from their action or their failure to act. There was, in short, no showing of facts establishing extraordinary or outrageous conduct mounting up to a wanton or reckless disregard for human life on the part of either defendant. Accordingly, we do not reach this suggested issue.

### 3. Last Clear Chance

■ The doctrine of last clear chance has no application to the facts of this case. In *Sanner v. Guard,* 236 Md. 271, 276, 203 A.2d 885, 888 (1964) we said:

We have many times reiterated that the doctrine (which presupposes the existence of both primary and contributory negligence) has no application where the contributory negligence of the plaintiff is concurrent with the

primary negligence of the defendant. In order for the doctrine to apply, there must be a showing of something new or sequential, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence. *MacKenzie v. Reesey*, 235 Md. 381, 201 A.2d 848; *State, Use of Taylor v. Barlly*, 216 Md. 94, 140 A.2d 173; *Meldrum v. Kellam Distr. Co.*, 211 Md. 504, 128 A.2d 400; *Peregoy v. Western Md. R.R. Co.*, 202 Md. 203, 95 A.2d 867.

The evidence in this case shows merely that the plaintiff's negligence was concurrent with the negligence of the defendants—there is no showing that the latter had an opportunity to avoid the accident after Liscombe's negligent action was put in motion.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.

ELDRIDGE, Judge, dissenting:

In my view, the record does not compel the conclusion that the plaintiff was guilty of contributory negligence as a matter of law. Instead, the question of contributory negligence was for the trier of facts. Therefore, I would reverse.